9602752/JGC

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED
SEP 25 1996
Michael N. Milby, Clerk
9:58 a.m.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| v. | § | MISC NUMBER: B-96-16 |
| | | (B-96-859M) |
| MARTHA VIDALES VAZQUEZ | § | |

## BRIEF IN SUPPORT OF EXTRADITION

Comes now the United States and files this Brief in Support of Extradition. The United States would show the Court as follows:

-1-

On September 17, 1996 the Court held a hearing regarding the extraditability of the accused, Martha Vidales Vazquez. At the request of the accused the hearing was postponed until September 25, 1996.

-2-

At the September 17, 1996 the Court interlineated paragraph 3 of the original complaint filed on July 12, 1996 to show that the homicide in question occurred on or about April 27, 1991. The Court also interlineated paragraph 2 of the original complaint filed on July 12, 1996 to show that a competent court had issued a warrant for the arrest of the defendant on or about July 2, 1992.

-3-

The United States would adopt by reference and incorporate *in toto* the Memorandum of Law filed on July 15, 1996 in this matter.

In short that memorandum established that this Court must determine three issues:

First, does this Court have proper jurisdiction to conduct the extradition hearing? This Court has jurisdiction.

Second, is the fugitive being sought for offense(s) for which the applicable treaty permits extradition? This question is also answered in the affirmative.

Third, is there sufficient evidence to establish probable cause to believe that the fugitive appearing in court is the fugitive sought and committed the offense charged?

Identity is not an issue in this case.

The accused counsel is expected to argue only that there does not exist probable cause to believe that the fugitive committed the offense charged.

-4-

It is crucial that this Court remember that the extradition hearing is not intended to determine whether the evidence presented is sufficient justify conviction. The Court is also required to engage in a liberal reading of the supporting documents (see Exhibits 1, 1-A, 2, and 3 admitted at the September 17, 1996 hearing) in a manner favoring extradition. It is also important to remember that the Fourth, Fifth, and Sixth Amendments have no application in extradition hearings. Nor do the rules of evidence or criminal procedure apply.

Indeed, the extradition hearings do not contemplate the introduction of live testimony. Moreover, the uncorroborated

statements of an accomplice are sufficient to establish probable cause in an extradition hearing.

The fugitive is not entitled to introduce evidence which conflicts with evidence submitted by the requesting state. Instead the accused persons right to controvert the evidence is limited to testimony which explains rather than contradicts the demanding country's proof.

-5-

In exhibit "4" of the material submitted by the United Mexican States in support of the request for extradition the mother of the accused and wife of the deceased, one MARIA VAZQUEZ MUNOZ, indicated that the deceased and the accused went out for a walk and only the accused returned. Ms. Munoz indicated that the accused had stated that deceased had "fallen down"; plainly inconsistent with the uncontroverted evidence that he was repeatedly assaulted with a machete.

Ms. Munoz also stated during that April 28, 1991 statement that "I did not tell them that my daughter Martha (the accused in the instant proceeding) had done that. I just told them that I had found him on the floor". Presumably the witness is making reference what she told the individuals operating the Teleforo Vidales truck that transported the deceased the town of Ahualulco. The witness also went on to say that the accused had a bad relationship with the deceased and that if "In case Martha is responsible for killing my husband I want her to be legally punished."

3

In Exhibit "6" of the documents submitted by Mexico indicate that on May 1, 1991 one of the accused persons sisters, Nicolasa Vidales Vazquez, was interviewed by law enforcement officers. That witness indicated that on the date of the murder the accused had rebuked Juan Jose Marquez Estrada, one of her former brothers in law, for not doing the job well, that he (Juan Jose) had only given him (the deceased) a little blow, and that she (the accused) would only give him (Juan Jose) half of the agreed upon money, some two hundred thousand pesos. The witness also indicated that at the time she did not know who the accused and Juan Jose were making reference too but upon hearing of the murder of her father believed that they (the accused and Juan Jose) were speaking of the murder of her father.

This statement to the police was later ratified and sworn to by the witness before an appropriate authority; see Exhibits 7, 8, and 9 of the documents submitted by Mexico.

On the Third of May, 1991 one of the accused sisters, Efigenia Vidales Vazquez, gave a sworn statement to Mexican prosecutors. In that statement she said that her mother, Maria Vazquez Munoz, had indicated that the deceased had indicated that the accused was involved in the assault that later proved fatal to him. See Exhibit 11 of the documents submitted by Mexico.

On June 1, 1991 another of the accused sisters, Maria Guadalupe Vidalez Vazquez, swore that the accused had threatened to kill the deceased shortly before his death; though she was unable

4

to provide the authorities with a copy of that letter. See Exhibit 15 of the documents submitted by Mexico.

Mexican prosecutors later requested a warrant for the arrest of the accused as well as Juan Jose. This request was denied by the trial court level of the Mexican judiciary. The prosecutors appealed and the appeal was denied.

In the months of January and February, 1992 additional sworn statements were tendered to Mexican law enforcement authorities by some of the accused relatives. See exhibits 22, 23, 24, and 25 of the documents submitted by Mexico. In those sworn statements the wife of the deceased says that the deceased indicated that the accused had participated in the assault which later claimed his life (Exhibit 24). It is also significant that the accused departed the area after announcing that the deceased had "fallen down" and never returned nor inquired about the status of the father. (Exhibit 4 and 24).

Exhibit 25 is a sworn statement by two more of the accused sisters, Josefina Vidales Vazquez and Efigenia Vidales Vazquez. In Josefina's statement she relates on February 24, 1992 a conversation between herself and the accused which occurred on or about the month of October, 1991 (the homicide occurred in April, 1991) in which the accused essentially admitted participation in the homicide of her father. In the same conversation the accused also threatened to kill Josefina.

Efigenia's statement relates a July 4, 1991 telephone conversation between her and the accused in which the accused

admitted complicity in the murder of the deceased. This conversation also contained a threat against the life of Efigenia by the accused.

Maria Guadalupe Vidales Vazquez swore on February 24, 1992 that the accused had indicated that she (the accused) and Juan Jose were going to kill the deceased. See Exhibit 26 of the documents submitted by Mexico.

The prosecuting authorities in Mexico later requested the issuance of a warrant for the arrest of the accused and others for the murder of the deceased. The trial court level denied the request. The prosecuting authorities then perfected an appeal which was granted. Exhibit 30 of the documents submitted by Mexico sets out the appellate court's rationale for ordering that the warrants of arrest be issued.

-7-

At this point the Court should consider the state of the evidence in the case at issue.

On April 27, 1991 two people, for our purposes "A" and "B" left a house. "A" is a man in his 80's. "B" is "A"'s daughter with whom he has had a very rocky relationship. "B" lives in another country and is at home for a visit. While on their walk "A" was brutally stabbed, slashed, and chopped with a machete a short distance from his house. "B" said that "A" 'fell down'. "B" immediately leaves town never to return nor does "B" call and inquire about the health or medical status of "A". "A" is still

alive but unable to talk when "B" says "A" 'fell down'. For all we knew "B" believed "A" to still be alive.

During an investigation a few days after the murder of "A" individuals report that "B" was identified by "A" as being involved in the assault which cost him his life. Other individuals swear that "B" rebuked another for not hitting "A" hard enough and indicated "B" would only pay the third party half of the agreed upon amount. Additional incriminating evidence is later accumulated in which "B" admits to others "B" was involved in the assault upon "A". After some legal proceedings a competent court decides that there is probable cause for the arrest of "A" and issues a warrant. Some years later "B" is found in another country and arrested, pursuant to an extradition treaty between "B"'s home country and the United States.

For extradition purposes the reviewing court in the United States is not to decide whether or not it believes the evidence or is comfortable with the legal systems in place in "B"'s home country. Rather the job of the reviewing court in the United States to take the evidence proffered by "B"'s country as true, as in the grounds for reviewing a motion for judgment of acquittal or directed verdict, and determine if that evidence establishes probable cause.

The Mexican legal system clearly does work. In one instance the prosecuting authorities sought a warrant which was denied, and the denial was affirmed. After additional investigation the prosecuting authorities requested a warrant a

7

second time. Again that request was denied by the trial court level of the judiciary. A reviewing court later reversed the trial court and ordered that the warrants be issued.

To contend that the accused can not expect a fair trial in Mexico is no more accurate than to contend that because a Circuit Court of Appeals or the Supreme Court of the United States has reversed a trial court judge there is no justice in the United States.

Returning to the example of "A" and "B", that is the state of evidence in this case. The United Mexican States have demonstrated probable cause of believe that Martha Vidales Vazquez participated in the murder of her father. The fugitive should be extradited.

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

John Grasty Crews II
Assistant United States Attorney
P.O. Box 1671
Brownsville, TX 78522-1671
210 548 2554

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 1996 a true and correct copy of the foregoing Brief in Support of Extradition was hand delivered to Mr. Felix Recio, Assistant Federal Public Defender.

John Grasty Crews II
Assistant United States Attorney

8