UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

MAR 0 4 1997

Michael N. Milby, Clerk
By Deputy

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED
JAN 2 4 1997

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN THE MATTER OF THE     *
EXTRADITION OF
                               *    MISC. NO. B-96-016

MARTHA VIDALES VASQUEZ     *

## MEMORANDUM ORDER

Petitioner, UNITED STATES OF AMERICA, acting on behalf of the Mexican government, has requested the extradition to Mexico of Respondent MARTHA VIDALES VASQUEZ, pursuant to the extradition treaty in effect between the USA and the Republic of Mexico.

This Court has read the parties' pleadings, listened to their counsel's arguments and considered the issues raised in light of the record and the applicable law, and is of the opinion that the certificate of extraditability should be **granted**. In support of the aforementioned opinion, this Court files the following findings of fact and conclusions of law.

1. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 3184. In personam jurisdiction and venue are established, Respondent resides in San Benito, Texas, within the Southern District of Texas, Brownsville Division.

2.  Respondent, MARTHA VIDALES VASQUEZ, was arrested on or about July 12, 1996, pursuant to a warrant of arrest issued by United States Magistrate Judge John Wm. Black The government of the United States of Mexico is seeking the extradition of Respondent because a warrant of arrest was issued on January 23, 1992, by a judge in San Luis Potosi in Mexico. Respondent is accused of being involved in the murder of her father in Mexico on or about April 27, 1991.

3.  An extradition treaty is in effect between the UNITED STATES OF AMERICA and the United States of Mexico. 31 U.S.T. 5054. Article 2, paragraph 1 provides for the extradition of persons accused of the crimes with which Respondent is accused.

4.  Respondent has not contested that she is the person sought in this extradition proceeding. The only contested issue is whether sufficient evidence has been adduced to support a finding of probable cause. The government of Mexico has presented a set of authenticated documents in Spanish along with an English translation of these documents. The documentary evidence established the following:

    (a) On April 28, 1991, Maria Vasquez Munoz, the mother of the Respondent, gave a sworn statement to the Mexican Public Prosecutor stating that on April 27, 1991, her daughter, MARTHA VIDALES VASQUEZ

came to visit her and her husband Baldomero Vidales Espinoza. The Respondent had not visited them for eight years. The Respondent and her father left the farm house to fix Respondent's punctured tire. Shortly after they left, she heard the Respondent shouting that her father had fallen. Maria Vasquez Munoz went to the area where the Respondent was and found her elderly husband Baldomero, lying on the ground. MARIA VIDALES VASQUEZ stated, "Martha told me while crying that she would go for help to remove him from this place. I ignore where she went. I asked my husband what had happened to him, but he did not answer me." Maria Vasquez Munoz went for help. Her husband was taken first to one hospital that the family did not approve of and that he was then moved to another hospital (Santa Elena Hospital in San Luis Potosi, Mexico), where Baldomero Vidales Espinoza died (Exhibit 5).

(b) An autopsy was performed (Exhibit 13), wherein it was determined that the deceased died from wounds around the cranial area received from a knife-like instrument.

(c) The deceased had six daughters, including the Respondent, and a son. All of Respondent's siblings gave sworn statements. Most of these affidavits are not helpful to the Court as they are not the statement of eye-witnesses and the substance of these statements are not material to the issue of probable cause. Nevertheless, the statements of two of Respondent's sisters tend to connect Respondent to her father's murder.

(d) In Exhibit 6, Nicolasa Vidales Vasquez, (one of Respondents's sisters), stated under oath that she and Paulina Vidales Vasquez (another of Respondent's sisters) Juan Jose Marquez Estrada

        (Paulina's husband), and the Respondent went in Paulina's car to their father's ranch on April 27, 1991. That "before reaching La Yerbabuena Ranch, the Respondent told Nicolasa to stay in the car since the brakes seemed to work defectively. Nicolasa and Paulina remained in the car. Respondent and Juan went to the house of the now deceased. They came back an hour later and got into the car. Respondent cried out to Juan, telling him that he had not made the job well; that he had only given a little blow; they ignored to whom they had beaten. Respondent told Juan that he was only to receive half of the agreed amount, that was two hundred thousand pesos. Juan told her that she could give no money to him if she so wanted." Nicolasa states she learned of her father's death the following day.

(e) Paulina Vidales Vasquez, in her sworn statement (Exhibit 10), denies all of Nicolasa Vidales Vasquez' allegations. On May 2, 1991, Paulina and Nicolasa appeared before the Public Prosecutor in a process known as a "Careo," and faced each other with regard to Nicolasa's statement. It is apparent from the record (Exhibit 10) that Paulina contested being in the car or of having seen Nicolasa and her ex-husband, Juan Jose Marquez. She further gave an alibi defense as to her whereabouts on the date in question, April 27, 1991.

(f) Mexican prosecutors later requested a warrant for the arrest of the accused as well as that of Juan Jose. This request was denied by the trial court level of the Mexican judiciary. The prosecutors appealed and the appeal was denied.

(g) Nine months after the death of Baldomero Vidales Espinoza, in January of 1992, the Public Prosecutor re-opened the investigation. On February 24, 1992, Maria Vasquez Munoz gave another sworn statement to the Public Prosecutor (Exhibit 22). In this second statement, Respondent's mother stated: "when accused MARTHA VIDALES VASQUEZ called me out, I ran toward my husband Baldomero Vidales, who was lying on the ground. Juan Marquez Estrada ran with a large knife in his hand, MARTHA ran after him, apparently to ask for help, but up to this date, MARTHA has not come back. I asked my husband who had hurt him since he was still alive, but he was not able to talk; therefore, I spoke to him loudly so as to make signs to inform me who had beaten him, and he held my calf telling me that MARTHA did; that is to say that he held my left calf and I asked him if it was MARTHA, and I showed him a part so as by means of that sign he could be able to clear me up if MARTHA did, and that is how it happened."

(h) On February 24, 1992, Maria Guadalupe Vidales gave a sworn statement to the Public Prosecutor stating that on the date in question (April 27, 1991) the Respondent, Paulina, and Juan Jose Marquez Estrada went to see her and asked for her help in killing her father. That she refused. She further stated that Nicolasa came to her 5 days after the funeral and told her that she went with the Respondent, Paulina and Juan Jose to kill her father (Exhibit 23).

(i) On April 2, 1992, the Public Prosecutor presented his findings to the proper court requesting arrest warrants for the Respondent, Paulina, and Juan Jose Marquez. The court denied the requests (Exhibit

28). On July 2, 1992, (Exhibit 29), an appeals court reversed the lower court and issued the arrest warrants. In July of 1996, formal requests for extradition were filed with the Secretary of State of the United States.

5. It is well settled that an extradition hearing is not intended to determine whether the evidence is sufficient to justify conviction for that determination will be made by the foreign court which ultimately tries the defendant. <u>Jhirad v. Ferrandina</u>, 536 F.2d 478, 484-485 (2nd Cir.) <u>cert. denied</u> 429 U.S. 833 (1976). Rather, the probable cause standard is utilized. <u>Fernandez v. Phillips</u>, 268 U.S. 311, 312 (1925).

6. In determining whether sufficient factual allegations have been made to justify extradition, the court must engage in a liberal reading of the supporting documents, in a manner favoring extradition. <u>United States v. Manzi</u>, 888 F.2d 204 (1st Cir. 1989).

7. Thus, in <u>Jhirad v. Ferrandina</u>, <u>supra</u> at 536 F.2d 484-485 the court noted:

> It is well to remember that Jhirad's culpability will not be determined in the United States. It is not the business of the courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based.

8.  While the evidence presented may be somehow inconsistent, this Court finds that Petitioner has shown that Respondent was with the victim when he was injured and, that immediately thereafter, she had disappeared. There is some evidence that would tend to show that Respondent had hired her ex-brother-in-law to kill her father. The case against Respondent appears to be circumstantial and weak, nevertheless, the low threshold of probable cause has been met.

Based on the evidence presented, this Court concludes that Petitioner has met its burden in showing that there is probable cause that Respondent has committed the crime of which she is accused. Accordingly, Petitioner's Request for a certificate of extraditability is hereby GRANTED.

Done at Brownsville, Texas, this 24th day of January, 1997.

Fidencio G. Garza, Jr.
United States Magistrate Judge